UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CAUSE NO.: |
| | ) 1:14-CR-00108-SEB/MJD |
| | ) Indianapolis, Indiana |
| -v- | ) **June 22nd, 2015** |
| | ) 3:00 p.m. |
| TIMOTHY ANDREW ENDRE, | ) |
| | ) |
| Defendant. | ) |


**Before the Honorable
SARAH EVANS BARKER, JUDGE**


OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA & SENTENCING HEARING


**For Government:**      Steven DeBrota, Esq.
                         Assistant U.S. Attorney
                         United States Attorney's Office
                         10 West Market Street
                         Suite 2100
                         Indianapolis, IN  46204


**For Defendant:**       Edward Schrager, Esq.
                         Cohen Garelick & Glazier, P.C.
                         8888 Keystone Crossing
                         Suite 800
                         Indianapolis, IN 46240


**Court Reporter:**      Laura Howie-Walters, FCRR, CSR, RPR
                         Official Court Reporter
                         United States District Court
                         46 E. Ohio Street
                         Room 217
                         Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT PRODUCED BY ECLIPSE NT COMPUTER-AIDED TRANSCRIPTION

1  (Open court.)

2  THE COURT:  Good afternoon, all.

3  MR. DeBROTA:  Good afternoon.

4  MR. SCHRAGER:  Good afternoon.

5  THE COURT:  Looking hale and hardy, Mr. Schrager.

6  MR. SCHRAGER:  I feel good.

7  THE COURT:  Oh, good.  You may be seated.

8  It goes without saying, Mr. DeBrota, that you look

9  hale and hardy.

10  MR. DeBROTA:  Thank you, Your Honor.

11  THE COURT:  Ms. Rota, will you call the matter

12  before the Court, please.

13  (Call to order of the Court)

14  THE COURT:  Is it Endre or Andre?

15  THE DEFENDANT:  Endre.

16  THE COURT:  Endre, okay.  Thank you, sir.

17  This matter's on the Court's calendar for entry of a

18  plea and sentencing.

19  So, Mr. Schrager, would you escort Mr. Endre to the

20  podium, please.

21  MR. SCHRAGER:  Yes, Your Honor.

22  THE COURT:  Good afternoon to you, sir.

23  THE DEFENDANT:  Good afternoon.

24  THE COURT:  Are you Timothy Andrew Endre, the same

25  person who was named by the clerk when she just called this

1  matter?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  What is your age, Mr. Endre?

4          THE DEFENDANT:  Thirty-five.

5          THE COURT:  And how far did you go in school?

6          THE DEFENDANT:  Some college.

7          THE COURT:  All right, good.  So you can read and

8  write the English language?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  Prior to coming to court today, I know

11 you've been in custody, but have you consumed any substance,

12 alcohol, medicine or narcotic, that would interfere with your

13 ability to understand and participate in this hearing?

14         THE DEFENDANT:  No, ma'am.

15         THE COURT:  Are you under the care of a doctor for

16 any condition that might interfere?

17         THE DEFENDANT:  No, ma'am.

18         THE COURT:  On May 23rd, 2014, an information was

19 filed in a single count.  The offense is enticement of a

20 minor, that is Girl 1, that lays out the offense that has been

21 brought against you.  Did you get a copy of that information

22 and did you read through it?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  Did you discuss it with Mr. Schrager so

25 you know exactly what it is you've been charged with?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  This is a felony offense, which means it

3     carries a potential penalty of one year or more of

4     incarceration.  Ordinarily, a felony offense is handled by way

5     of a grand jury indictment, which is to say the grand jury

6     makes the decision as to whether there is sufficient evidence

7     to warrant the bringing of a charge, and the charge being

8     brought against the person who's been named in that

9     investigation.

10          That right to have the grand jury make that initial

11     screening decision about the sufficiency of the evidence is a

12     valuable right, and it's yours if you choose to exercise it,

13     but you can give it up in whole or in part as long as you know

14     what you're doing, as long as you do that voluntarily.

15          So the information is a charge that's brought by the

16     United States Attorney as opposed to the grand jury.  And

17     because it is the United States Attorney that brings this

18     charge, you have to give up the right that is yours actually

19     under our Constitution to have the grand jury make this

20     initial decision.

21          Was that explanation made to you previously?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  And did you execute that waiver of

24     indictment before the magistrate judge?

25          THE DEFENDANT:  Yes, ma'am.

1       THE COURT:  And do you want to proceed today on the

2  basis of that same waiver?

3       THE DEFENDANT:  Yes, ma'am.

4       THE COURT:  Did anyone persuade you or coerce you

5  against your will to make that decision?

6       THE DEFENDANT:  No, ma'am.

7       THE COURT:  Do you waive the formal reading of the

8  information today?

9       THE DEFENDANT:  Yes, Your Honor.

10       THE COURT:  The penalties that you face upon a

11  conviction of this offense are as follows.  The period of

12  incarceration is ten years to life imprisonment.  The period

13  of supervised release is five years to life.  Do you know what

14  supervised release is?

15       THE DEFENDANT:  Yes, ma'am.

16       THE COURT:  There's a maximum $250,000 fine upon

17  conviction.  And there's the special assessment, which is a

18  $100 fee that has to be paid to the Clerk, and there's a

19  $2,500 restitution figure to reimburse the victim of this

20  offense.  So those are the penalties that you face upon

21  conviction.  Do you understand those, sir?

22       THE DEFENDANT:  Yes, ma'am.

23       THE COURT:  When I say these are the penalties that

24  are set by statute, that means they're written into the law

25  that makes this conduct unlawful.  And as such, they form

1 boundaries or limits on my discretion.  So no lawfully-imposed

2 sentence can go outside these ranges.

3       We'll figure out what a reasonable sentence is a

4 little later in this hearing, but we start out with what the

5 statute says are the statutory limits for a sentence that will

6 be imposed.  And no lawfully-imposed sentence can go outside

7 these limits I've just told you.  Do you understand that, sir?

8       THE DEFENDANT:  Yes, ma'am.

9       THE COURT:  Before you could be found guilty of this

10 offense, the Government will have to have evidence to prove

11 the essential legal elements of the offense.  That means the

12 important legal subparts.  Each has to be proven by the

13 Government's evidence beyond a reasonable doubt.  That's true

14 whether you enter a plea to this charge or whether you go to

15 trial.  The evidence has to suffice in that way.

16       Do you understand that?

17       THE DEFENDANT:  Yes, ma'am.

18       THE COURT:  Do you have any questions you want to

19 ask me about the information or about the possible statutory

20 penalties?

21       THE DEFENDANT:  No, ma'am.

22       THE COURT:  The file discloses that there's a

23 petition to enter a plea of guilty, and a plea agreement and,

24 in fact, an amended plea agreement.  The amended plea

25 agreement was filed today.  So let me ask about those

1    documents.  Did you read those before you signed them?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And when you signed them, was that your

4    indication that you accept what's written there as true and

5    binding on you in these ways?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  I'm not going to go through all of the

8    elements of the plea agreement, but I'll answer any questions

9    you may have, or the amended plea agreement that's taken the

10   place of the original plea agreement.  But I want to highlight

11   the agreement that you've reached because it's important that

12   we're all operating on the basis of the same understanding.

13             So the agreement you've reached is an agreement

14   under a rule that the lawyers and I refer to by a number

15   because that's how we keep track of them.  It's Rule

16   11(c)(1)(c).  That signals that this is a binding plea

17   agreement that you and the Government have agreed upon aspects

18   of the sentence.  And my role in that will be to consider the

19   agreement that you've reached with the Government, and my

20   options are yes or no.  I can accept it or not, depending on

21   my own judgment of whether or not that reflects a reasonable

22   sentence, but I can't tinker with it.

23             So your 11(c)(1)(c) agreement is that the sentence

24   be at 212 months.  If I accept it, then I'll sentence you at

25   212 months.  If I think that that's not a reasonable sentence

1  under rules that apply and under reasons that I'll state to

2  you, I'll reject it, but I can't decide on some other sentence

3  because it is not the agreement you've reached.

4          Do you understand that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  If I reject it, then you go back to

7  square one basically.  You can renegotiate a plea agreement or

8  you can go to trial.  So you can decide what to do in that

9  circumstance, but those would be the steps that would flow

10  from my decision if I didn't accept your plea agreement.

11          Do you understand that, sir?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Also, in the plea agreement that you've

14  reached, part of it has already been referenced, and that is

15  that you've agreed to the information as opposed to having the

16  grand jury consider the evidence.  You've agreed to the $2,500

17  restitution figure.

18          If I accept your agreement, your 11(c)(1)(c)

19  agreement and sentence you at 212 months, you're going to give

20  up your right to appeal that decision.  Do you remember making

21  that part of your plea agreement?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  That right to appeal is another valuable

24  right, a legal right that's yours if you choose to exercise

25  it, but like other rights, you can waive it in whole or in

1   part as long as you know what you're doing, as long as you do

2   it voluntarily with an understanding of the consequences of

3   that, and an acceptance of the consequences.

4           So with respect to the right to appeal, you have

5   included it in your plea agreement that if I agree to a

6   212-month sentence, that you're giving up your right to appeal

7   that decision.  Do you remember making that a part of your

8   agreement?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  With respect to that particular part,

11  because it's really so important, I'll ask specifically, did

12  anyone persuade you or coerce you against your will to enter

13  into that agreement?

14          THE DEFENDANT:  No, ma'am.

15          THE COURT:  It's also a part of your plea that

16  you'll forfeit any property that reflects the ill-gotten gains

17  of this offense.  There are no other guidelines in the plea

18  agreement, so whatever other decisions have to be made with

19  respect to the fine or the terms of supervised release, those

20  things you've left to me to decide.  Is that how you intended

21  it to be?

22          THE DEFENDANT:  Actually, from what I understand,

23  there's a set ten-year supervised release in the plea, ma'am.

24          THE COURT:  Is that in the amended plea agreement?

25          MR. DeBROTA:  Yes, Your Honor.  Directing your

1  attention to paragraph seven, I can show you --

2          THE COURT:  I didn't catch that when I read through

3  this.  Oh, yes, okay.  You're right.  Ten years supervised

4  release.  Is that 11(c)(1)(c)?

5          MR. DeBROTA:  Yes.  Let me kind of give the Court a

6  little bit of history.  Originally the idea was the parties

7  were going to argue about that length of supervised release,

8  which is five years minimum up to life.

9          I agreed to a ten-year term.  So I consider that an

10 amendment to a C agreement, so it's a binding 10 on the Court.

11 That's a subsequent change between the first plea agreement

12 and the second.  And to effectuate that point, the defendant

13 actually wrote "ten years" and crossed out "lifetime" in front

14 of paragraph seven, if you can see that.

15         THE COURT:  I do see that.

16         MR. DeBROTA:  I defer to his language, but just to

17 be clear, I think that's an agreement under 11(c)(1)(c) for

18 ten years.  That would be the parties jointly putting that to

19 the Court.  So I think the safe explanation is it is part of

20 the binding plea agreement, Your Honor.

21         THE COURT:  Then is the period of incarceration and

22 the period of supervised release, are those the only (c)(1)(c)

23 provisions.

24         MR. DeBROTA:  Yes.  And it was -- that was the

25 original drafting point, and I think that's what we intend.

1  The rest of it is advisory.

2         THE COURT:  Okay.

3         MR. DeBROTA:  Okay?

4         THE COURT:  Yes.  Is that how you understand it,

5  Mr. Schrager?

6         MR. SCHRAGER:  It is, Your Honor.

7         THE COURT:  And just as importantly, Mr. Endre, is

8  that how you understand it?

9         THE DEFENDANT:  Yes, ma'am.

10        THE COURT:  Those are the two parts of the

11 11(c)(1)(c) agreement, right?

12        THE DEFENDANT:  Yes, ma'am.

13        THE COURT:  So I have not touched on all aspects of

14 your plea agreement, but I want to make sure you understand

15 that the entire agreement is binding on you, and it's like a

16 contract with the Government.  So even though I haven't

17 addressed it specifically in this hearing, the entire

18 agreement is binding on you just as it is binding on the

19 Government.  Is that how you understand it, sir?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  Did anyone persuade you or coerce you

22 against your will to enter into this agreement?

23        THE DEFENDANT:  No, ma'am.

24        THE COURT:  Do you have any questions you want to

25 ask me about it?

1      THE DEFENDANT:  No, ma'am.

2      THE COURT:  A similar question about your petition

3 to enter a plea of guilty.  Did anyone persuade you or coerce

4 you against your will to make that filing with the Court?

5      THE DEFENDANT:  No, ma'am.

6      THE COURT:  When you signed these documents, again,

7 was that your indication that you agree to what's written here

8 and understand that it is part of your obligation now?

9      THE DEFENDANT:  Yes, ma'am.

10      THE COURT:  Let me explain to you what procedures we

11 would follow and what rights would be yours if you did not

12 enter a plea of guilty.

13      If you did not enter a plea of guilty, we'd set the

14 matter down for a sentencing —— for a trial, sorry, set the

15 matter down for a trial.  The trial would occur here in this

16 courtroom.  Prior to the commencement of trial, we send out

17 summonses to people who live here in central Indiana.  We get

18 their names through a random computer selection process so

19 they're not hand picked.  We use the public documents of the

20 counties where they live.

21      You're in federal court now, and so you know that

22 you're headquartered —— our court is headquartered here in

23 Indianapolis, and that's why you're in Indianapolis, but we

24 draw our jurors from across a wider swath of counties here in

25 central Indiana.

1    So we send out summonses to those people that we've

2 identified in that random fashion directing them to come in on

3 that first morning of trial to be inquired of as to their

4 fitness and availability to serve as jurors.

5    Whether a person qualifies to serve on a jury turns

6 primarily on whether they can be fair and impartial.  Fair and

7 impartial in this context means that they have to be able and

8 willing to render a verdict just on the evidence that's

9 presented and follow my instructions on the law.

10    So we go through a question-and-answer process.

11 They answer under oath so we can rely on the truthfulness of

12 their answers.  And when we have twelve people about whom we

13 have a high level of assurance that they can be fair and

14 impartial, we impanel them to hear and decide your case.

15    At that point, the Government, Mr. DeBrota, calls

16 the Government's witnesses to testify.  And as he asks his

17 questions and completes his proffers to the jury based on

18 those questions, Mr. Schrager can cross-examine those

19 witnesses.

20    Mr. DeBrota will also proffer whatever other

21 evidence the Government has gathered in the course of its

22 investigation, and if Mr. Schrager thinks it's not proper

23 evidence for the jury to consider under the rules of evidence,

24 he can object, and I'll make a ruling as to whether as a

25 matter of law, the jury can consider that challenged evidence.

1    After Mr. DeBrota calls all of its witnesses in an
2   effort to prove up this charge against you beyond a reasonable
3   doubt, and that's the Government's obligation, to have
4   evidence of that level of convincing force, that persuasive
5   force, to convince the jury to that level of certainty.  It's
6   what's the Government's aiming to achieve.  That's their duty
7   to achieve that.  And so when Mr. DeBrota says he's put on all
8   of his evidence in an effort to do that, he'll state that the
9   Government rests, which means he's finished all of his
10  evidence in his case-in-chief.
11    At that point, you can decide, with the advice and
12  counsel of Mr. Schrager, whether you want to testify in your
13  own defense and/or call witnesses on your behalf.  There's no
14  obligation that you do either of those.  You're presumed
15  innocent of this charge.  You're presumed innocent as you
16  stand before me right now.  You're presumed innocent
17  throughout the trial unless and until a jury concludes
18  otherwise.
19    So you don't have to testify.  You're permitted to,
20  of course, but not required, and the same with your witnesses.
21  You're permitted to call in witnesses on your defense.  If you
22  choose to, you have the Court's subpoena power available to
23  you the same as the Government to bring in your witnesses, but
24  again, you're not required to do that.
25    Whether or not you put on any evidence, yours or

1 your witnesses, the jury's responsibility's going to be the

2 same.  It has to decide has the Government proven the case

3 beyond a reasonable doubt.

4          So you're permitted to testify and call witnesses,

5 as I said, not required.  And if you do put on such evidence,

6 Mr. Schrager will lead off with the questions on your defense,

7 on your behalf in your defense I should say, and Mr. DeBrota

8 will cross-examine.

9          After all the evidence is presented, the lawyers

10 make closing arguments to the jury to explain their take on

11 the evidence, persuade the jury to go in line with their

12 views, and then I give the jury instructions on the law to

13 guide them in their deliberations.

14          My instructions include these things we've just

15 talked about, that the Government has the burden of proving

16 this charge beyond a reasonable doubt, that you're presumed

17 innocent.  You have no obligation to testify or call

18 witnesses, if you exercise that right, that is your right, I

19 tell the jury, so they can't hold that against you.  If you

20 choose to call witnesses, you may, of course.

21          There are quite a number of other instructions,

22 reminding the jury that you're presumed innocent, that the

23 Government has the burden of proof and so forth and so on.

24          One other important one I'll mention this afternoon

25 and that is that I tell the jury that their verdict must be

1  unanimous.  All 12 jurors have to agree.

2          So we conclude the instructions and take a recess.

3  The jury departs.  They go out the door I just came in this

4  afternoon, but they go up to their jury room where they

5  deliberate in private.  When they reach a unanimous verdict,

6  they notify us of that.  They return here in open court but

7  taking their seats there.  We will have gathered and they

8  announce their verdict.

9          If they find you guilty of this charge, I'll set the

10  matter down for sentencing at some future time.  If they find

11  you not guilty of this charge, I'll dismiss this case, relieve

12  you of any terms of bond.  You'd be free to go.

13          If for some reason, the jury can't make up its mind

14  unanimously, I will declare a mistrial and the Government will

15  decide whether to try the case to another jury at a future

16  time.  If you're found guilty, I'll sentence you, and if at

17  that point you're concerned that your rights hadn't been

18  properly protected, you can raise those issues with the Court

19  of Appeals.

20          The Court of Appeals that reviews the record of our

21  case sits in Chicago.  Three judges of that court will review

22  the record of our proceedings.  You see our court reporter's

23  making a record of this hearing.  She's getting down each word

24  that we're saying.  And if there's an appeal, she'll prepare a

25  written transcript, and on that basis, the Court of Appeals

1 will read it and review it, consider the lawyers' arguments

2 and make a decision.

3          If they uphold the conviction, and you're concerned

4 still that your rights hadn't been protected properly during

5 the trial, you can raise those issues again by asking the

6 Supreme Court of the United States to review the decision of

7 the Court of Appeals and the trial that occurred here.

8          I say you can ask the Supreme Court to consider your

9 case.  There are only nine justices.  They're asked to take

10 cases from all over the country.  They can't possibly take

11 them all, but you would have a right to ask them to consider

12 yours.

13          So that's an explanation of the rights that you

14 would have and the procedures we would follow if this matter

15 went to trial instead of proceeding by your plea today.  Do

16 you understand my explanation?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Is what I've told you basically what

19 Mr. Schrager has told you?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Do you understand that if you enter your

22 plea and I accept it, that you're giving up your right to a

23 trial and to, we say, an appeal on the merits, which means an

24 appeal that tests the sufficiency of the Government evidence;

25 do you understand that?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  You may also be giving up your right to

3   appeal the sentence as well.  Do you understand that?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Is that what you want to do, sir?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Has anyone persuaded or coerced you

8   against your will to make those decisions?

9           THE DEFENDANT:  No, ma'am.

10          THE COURT:  Mr. Schrager's your court-appointed

11  counsel; is that right?

12          THE DEFENDANT:  That is correct, ma'am.

13          THE COURT:  Are you satisfied with his

14  representation?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Mr. Schrager is an able and experienced

17  lawyer.  And we know that he knows his business because he

18  appears regularly representing clients such as you, but as

19  experienced and able as he is, he can't just dream up his

20  advice for his clients, you or any of the others.  He listens

21  closely to what you tell him and then he does some

22  investigation and research, has conferences with the lawyers

23  for the Government and so forth.

24          But it all starts with your making a full and

25  truthful disclosure to him about your involvement in a

1  particular offense.

2           So have you done that here, sir?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Have you told him everything about your

5  involvement in this offense?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  If you have, I'm confident you can rely

8  on his legal advice, okay?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Now, prior to taking the bench this

11 afternoon, I was provided with a factual summary of the

12 evidence that underlies this charge against you.  So let me

13 ask a couple of questions first.  Did you read it before you

14 signed it?

15          THE DEFENDANT:  I never got one, ma'am.

16          MR. SCHRAGER:  Your Honor, it was my understanding

17 that the Government was going to read one.

18          THE COURT:  This says "Factual Basis for Guilty

19 Plea" and it's signed by everybody.

20          MR. SCHRAGER:  Oh, I'm sorry.

21          THE COURT:  But it was signed by Ms. Beitz, so maybe

22 not you.

23          MR. DeBROTA:  We can read that if you need to.  The

24 agent brought another one.  Either way you want to do that,

25 Your Honor.

1        MR. SCHRAGER:  Your Honor, may I just have a really

2   quick moment?

3        THE COURT:  Do you want to look at this?

4        MR. SCHRAGER:  May I please?

5        THE COURT:  Yes.

6        MR. SCHRAGER:  Your Honor, may I approach?

7        THE COURT:  Yes.

8            (Off-the-record discussion.)

9        How would you like to proceed, Mr. Schrager?

10       MR. SCHRAGER:  Your Honor, I have discussed this

11   with Mr. Endre, and he does recall reading it.  And frankly, I

12   do, too.  My predecessor is the one that negotiated that and

13   discussed it with Mr. Endre.  I discussed it with him as well

14   way back when, and he fully abides by and accepts all of the

15   material facts in that statement, and accepts that as a

16   factual basis.  And there's no need for either the Court, the

17   Government or its agents to reread that document from our

18   estimation.  It's up to you, of course.

19       THE COURT:  Okay.  My question to you, Mr. Endre,

20   will be this.  Is what's written here true as far as you know?

21       THE DEFENDANT:  Yes, ma'am.

22       THE COURT:  Do you have any disagreement or any

23   quarrel with these facts?

24       THE DEFENDANT:  No, ma'am.

25       THE COURT:  Did you do what it says you did here,

1 sir?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Mr. DeBrota, if this evidence were

4 presented to the jury, is this the evidence that the

5 Government would be prepared to adduce if the matter went to

6 trial?

7          MR. DeBROTA:  Yes, Your Honor.

8          THE COURT:  If your agent were called to testify at

9 this hearing under oath to the facts underlying this charge

10 against Mr. Endre, are the facts that are summarized here the

11 facts that he would testify to?

12          MR. DeBROTA:  Yes, Your Honor.

13          THE COURT:  Is it your judgment, sir, that this

14 evidence would support a conviction of Mr. Endre by a

15 reasonable jury if that jury were so to conclude, especially

16 with respect to the essential elements of this one charge?

17          MR. DeBROTA:  It would, Your Honor.

18          THE COURT:  Thank you.  Mr. Schrager, I know you

19 will have reviewed the discovery and had conferences with

20 Mr. DeBrota.  Are you satisfied as well that the evidence

21 that's summarized here is available to the Government if this

22 matter went to trial?

23          MR. SCHRAGER:  It is, Your Honor.

24          THE COURT:  Is it also your judgment that this

25 evidence, if presented to a reasonable jury, would support a

1 conviction of Mr. Endre of this charge beyond a reasonable

2 doubt?

3          MR. SCHRAGER:  Yes, it would, Your Honor.

4          THE COURT:  Has that been your advice to him, sir?

5          MR. SCHRAGER:  It has.

6          THE COURT:  My own review of these facts allows me

7 to conclude as well that they are sufficient, that if this

8 evidence were presented to a jury, that a jury could find on

9 this basis that you're guilty as charged in this information.

10 So I accept these facts as sufficient in that sense.

11          So having made these explanations to you, Mr. Endre,

12 and having considered your responses, and having now before me

13 and well in mind the facts that underlie the charge, I put the

14 question to you, sir, how do you plead to the charge against

15 you in this information, guilty or not guilty?

16          THE DEFENDANT:  Guilty, Your Honor.

17          THE COURT:  It is the finding of the court in the

18 case of United States of America versus Timothy Andrew Endre,

19 that Mr. Endre is fully competent and capable of entering an

20 informed plea, that he's aware of the nature of the charges

21 and the consequences of his plea, that his plea of guilty is a

22 knowing and voluntary plea supported by an independent basis

23 in fact containing each of the essential elements of the

24 offense.  His plea is therefore accepted and he's now adjudged

25 guilty of the offense charged in the information.

1          Because we were on notice that you intended to plead

2     guilty to this charge, we were able to authorize the

3     preparation of the Presentence Investigation Report.  One of

4     our best probation officers, Ms. Fitzgerald, drew that

5     assignment.  Did you see her today?  Did you recognize her?

6          THE DEFENDANT:  I did not recognize her, but she is

7     very nice.

8          THE COURT:  Yes.  And now you recognize her, don't

9     you, sitting across the courtroom?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  So she prepared the Presentence

12     Investigation Report that we're going to use now to tee up the

13     various sentencing issues.  So let me just start with that.

14     Did you get an opportunity to review this report and --

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  -- did you have sufficient time to

17     discuss it with Mr. Schrager?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Mr. Schrager, did you have sufficient

20     time to review the report and discuss it with Mr. Endre?

21          MR. SCHRAGER:  Yes, I did, Your Honor.

22          THE COURT:  Mr. DeBrota, did you have sufficient

23     time to review the report and prepare?

24          MR. DeBROTA:  Yes, Your Honor.

25          THE COURT:  You can tell, Mr. Endre, in reviewing

1  this report, that it has two kinds of information.  One part

2  has to do with you in a biographical sense.  That is to say,

3  it tells the reader, such as myself, about your youth, your

4  family, your health, your work history, your education, all of

5  those things.  So it's sort of a biographical summary.

6         The other part of the report has to do with this

7  offense that you've now been found guilty of, and how the

8  sentencing options play out, how the guidelines apply, and the

9  other 3553(a) factors apply.  So I'll just pause there to say

10  did you notice that about the report, it has those two kinds

11  of information?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  This is a document that's personal to

14  you in the way I just described because of this case and the

15  biographical information.  So we keep it under seal in the

16  court's records.  That means it's kept in a confidential

17  status.  So you don't need to worry about it getting out in a

18  way that will embarrass you or your family, or compromise your

19  security.

20         There are a few other official uses that can be made

21  of the report, but they're limited.  The Bureau of Prisons can

22  use it, the probation department, the Court, but you don't

23  need to worry about it otherwise being distributed to the

24  media, that sort of thing.

25         Besides the report, I have a letter from your sister

1   and a letter from your mother.  Did you see those letters?

2               THE DEFENDANT:  No, ma'am --

3               THE COURT:  I beg your pardon?

4               THE DEFENDANT:  Yes, ma'am.

5               THE COURT:  So I mention them so that I can also say

6   nothing else has come to me that I've withheld from you.  So

7   you know everything that I know, that is of a factual nature,

8   on the basis of which I'll make a sentencing decision,

9   nothing's been withheld.  Do you understand that, sir?

10              THE DEFENDANT:  Yes, ma'am.

11              THE COURT:  Now, the point at which we're headed

12  here in trying to fashion a sentence is for me to understand

13  the circumstances of your case, your background, what led up

14  to it and so forth, with sufficient clarity that the decision

15  that's finally made on your sentence is a reasonable sentence.

16              And you can hear by the way I said that, Mr. Endre,

17  that I sort of stressed that word "reasonable."  I sort of

18  slowed down to say that word, and that's because that has a

19  special meaning here in this context.  Reasonable doesn't mean

20  just if it seems reasonable to me.  Reasonable is measured by

21  law.

22              So we'll go through the process here in an effort to

23  determine what's reasonable in that sense.  Even if we were to

24  ask around and have the lawyers and everybody comment today,

25  it's not going to control the decision because the issue of

1  reasonableness is determined by law. And to the extent that I

2  succeed in folding the statutory factors into my judgment, it

3  will be deemed legally reasonable.

4  Now you know what these statutory factors are

5  because you read Ms. Fitzgerald's report, and she included

6  them, in a helpful fashion, back in the very end of it,

7  paragraph 93. Do you have it there, Mr. Schrager?

8  MR. SCHRAGER: Yes.

9  THE COURT: Show Mr. Endre. Those paragraphs that

10  start with letters A through G are lifted right out of the

11  statute, and those are the factors that are to guide my

12  discretion.

13  So I'll be thinking about and listening for matters

14  related to the nature and circumstances of this offense, your

15  history and characteristics, what led up to this, what was

16  happening here. The sentence has to reflect the seriousness

17  of the offense and promote respect for the law and so forth on

18  down through that list.

19  And that's like the yardstick. That's the measure

20  for the reasonableness of my sentence. As I said, to the

21  extent that I succeed in folding those factors into the

22  decision, it will be deemed legally reasonable.

23  Do you understand that, sir?

24  THE DEFENDANT: Yes, ma'am.

25  THE COURT: We go through a sentencing guideline

determination process and the guidelines matter. They won't
have the final word in the sense of controlling the decision,
but they matter. They're influential because they include
many of these statutory factors.

So we do an accurate calculation, and then we say
okay, now let's look at the plea agreement, and now let's look
at 3553(a), and fold all of those things into the final
decision.

That's the process we're going to use in fashioning
a sentence today. Do you understand those things, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Again, is what I've told you what
Mr. Schrager has told you in preparing you for today?

THE DEFENDANT: Yes, ma'am.

THE COURT: The addendum to the presentence report
reflects that there are no objections to the way in which
Ms. Fitzgerald has interpreted and applied the guidelines. Is
that your view, Mr. Schrager?

MR. SCHRAGER: It is, Your Honor.

THE COURT: Is that your view too, Mr. DeBrota?

MR. DeBROTA: Yes, Your Honor.

THE COURT: My own view is that she has done her
work accurately and correctly, and so I will adopt this report
as she's prepared it and circulated for all to review as my
own, and it will now inform the decisions that are yet to be

1  made.

2         The upshot of the guideline application is that you

3  have a total offense level of 31, and a criminal history

4  category of 6.  Do you remember how we got to those numbers?

5         THE DEFENDANT:  Yes, ma'am.

6         THE COURT:  And when we applied those numbers to the

7  grid in the sentencing manual, did you see that?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  It comes forward with the information

10  that I'm about to tell you about the guidelines.  With respect

11  to the period of incarceration, the guideline range is 188

12  months up to 235 months.  The period of supervised release

13  under the guidelines is life.  Under the guidelines, like

14  under the statute, you're not eligible for probation.

15         The fine range is 15,000 on the low end up to

16  150,000 on the high end.  There is the restitution figure to

17  which you've agreed of $2,500, and a special assessment of

18  $100, which is a nonwaivable fee that has to be paid to the

19  Clerk of the Court.  So that will be part of any judgment

20  that's imposed.

21         Those are the guidelines that apply.  Do you agree

22  with that extrapolation, Mr. Schrager?

23         MR. SCHRAGER:  I do, Your Honor.

24         THE COURT:  And do you, Mr. DeBrota?

25         MR. DeBROTA:  Yes, Your Honor.

1          THE COURT:  So we consider those, and then we look

2     at the plea agreement.  The plea agreement with respect to the

3     period of incarceration is about midway through the guideline

4     range at 212 months.  The supervised release term is ten years

5     pursuant to your agreement.

6          There was no agreement with respect to the fine, so

7     I'll have to decide on that myself without consideration of an

8     11(c)(1)(c) agreement.  The restitution was part of your plea

9     agreement, $2,500.  That's not technically part of the

10    11(c)(1)(c), but it's nonetheless a matter I'll have to

11    decide, taking into account what you both agreed to, and again

12    the special assessment.

13         So all of that said, Mr. Endre, it's appropriate for

14    you to speak and to tell me whatever you want me to know and

15    think about and take into account in fashioning a sentence.

16    Once the sentence is imposed today, it's likely to be a

17    completed matter.  We don't usually have a way to come back

18    and look at it again.  There's not a motion to reconsider as

19    such.

20         Sometimes a case will come back from the Court of

21    Appeals, but you've included in your plea agreement a waiver

22    of that right.  So I mention it just so you won't put off till

23    some other time telling me whatever it is you want me to know

24    and think about assuming there will be another time because

25    there's not likely to be.

1    After I hear from you, sir, I'll hear from

2 Mr. Schrager on your behalf, and then I'll hear from

3 Mr. DeBrota, but you may lead off, sir.

4    THE DEFENDANT:  Honorable Sarah Evans Barker, words

5 cannot begin to express my sincere apologies to the legal

6 system involved in this case.  I will take forth from this

7 experience the knowledge and wisdom I lacked before to

8 recognize the ramifications of this crime, and the overall

9 effect on all parties involved.

10    The wrong and the crime itself, the self disgust and

11 above all the lasting pain and hurt the crime leaves.  Not

12 just for myself, but to all parties it involves, families

13 included.

14    I would like to show my gratitude to the Court for

15 the opportunity to better myself and get the help I want and

16 need.  Lastly, I would like to thank the Honorable Sarah Evans

17 Barker for presiding over my case, and ask the Lord to bless

18 her and all the cases she presides over.  Thank you, Your

19 Honor.

20    THE COURT:  Okay, thank you for those thoughtful

21 words, Mr. Endre.  The thing that makes this conduct by you so

22 harmful can be distilled into the sort of central factor.

23 There are other facts, but the primary fact is the harm that

24 was caused to the young girl who was the object of your

25 enticements.  That's the offense, that you enticed a minor.

1    Now, what we know about a minor person who's not

2 reached legal -- age of legal responsibility is that they are

3 young and susceptible to pressure, and they have not formed

4 reliable judgments.  They are still growing, still trying to

5 figure out life, and they are vulnerable in that sense.  They

6 can be hurt easily, and the law almost always takes account of

7 the need for protections of children.

8    She was 13 at the time you made your untoward

9 overtures and contacts and advances towards her.  And so it

10 wouldn't be right, it's not right legally, and it's not right

11 logically to assume that she can defend herself against the

12 kinds of overtures you were making towards her.

13    So I don't have very much information about her,

14 although I have to assume that this was harmful.  In any

15 event, the law surrounds her with protections and sort of

16 imputes a harm to her because of her youthfulness.

17    So I think it deserves to be mentioned specifically,

18 and that's why I take time to do that today to say that's the

19 gist of the harm here.  With all of the other ways in which we

20 communicate with each other, a lot of them unsavory, a lot of

21 them distasteful, a lot of them tawdry and unwelcome.  With

22 all kinds of social media and mass media, still the law says

23 you can cross the line.

24    You've gone too far when you victimize a child, and

25 that's why the penalties are so tough.  These are really tough

penalties. Now, you didn't get there in just one fell swoop,
in one giant step. You're up in a criminal history category
six. So you've been dancing around with illegal conduct for a
long time.

So there's something amiss, Mr. Endre. I'm not
anything other than just what I am, just a judge over here,
but there's something that doesn't connect right in terms of
your own sense of personal responsibility, for your conduct,
and your behavior and your ability to conform to the lawful
standards.

These standards that the law imposes, the standards
that are imposed on you are imposed on everybody, everybody
alike. You have to live within the law. This is a country of
law. We believe in the rule of law.

So it applies as much to Mr. Schrager as it does to
you, to Mr. DeBrota, to Mr. Smith, to me, everybody, sort of a
lowest common denominator. Do you remember in school learning
about the lowest common denominator? That's what we talk
about in this context, too. Everybody has that minimal
expectation that they live within the law. And whatever's
going on here, and I think there are really some complicated
reasons that you need to sort out, unless you like being
incarcerated, unless you like being in and out of jail and
standing before a judge, that it behooves you to try to figure
these things out, and to learn the means of control, to get

1  your behavior back in line with societal expectations.

2           So it would be simple, unfair to suggest that it

3  would be easy to do this.  If it were easy, you would have

4  done it.  If it was going to yield to your mother's wishes and

5  your sister's wishes, you would have done it.  I think they

6  expressed beautifully really their continued support for you

7  and their affection for you, their worry over you, but they

8  can't wish you into another kind of behavior, another kind of

9  life.  This is a responsibility that a 35-year-old-man with

10  some college behind him to draw on has to take responsibility

11  for.

12           In short, this pattern of conduct just can't

13  continue.  And that's another thing that's reflected in these

14  very harsh sentencing parameters.  There's no way that you can

15  look at the statute, ten years to life, or the guidelines, 188

16  months to 235 months, or your plea agreement of 212 months and

17  think anything other than "Wow, that's a lot of time."

18           So that's where we stand at this juncture and that's

19  why this is so important.  So let me just ask you, Mr. Endre,

20  during the time you've been incarcerated, and I know you've

21  been in since January of 2014, so a year and a half basically,

22  if you've been thinking about any of these things and have

23  come up with any insights or any goals that you think would

24  apply to you today?  Got any thoughts on that?

25           THE DEFENDANT:  I have thought about it plenty.  I

1 know that a lot of stuff's just been wrong, and a lot of

2 things that I've tried haven't helped.  I want the help.  I

3 don't want to keep doing anything.  I want to stay on the

4 straight and narrow and do right.  I'm hoping that I can get

5 that help that I need from programs available in the

6 institution that I am sent to.

7 　　　　　THE COURT:  I'm prepared to recommend to the Bureau

8 of Prisons that you have mental health counseling.  I don't

9 know enough about this to know if the sort of specialized

10 treatment and care for sex offenders applies exactly, or if

11 it's just under this larger umbrella of mental health issues.

12 But whatever it is, there may be some resources that you can

13 take advantage of.

14 　　　　　This is not something that can happen to you.  This

15 is something you have to do.  I can make the opportunity

16 available to you.

17 　　　　　THE DEFENDANT:  I --

18 　　　　　THE COURT:  I can't make it matter to you.  Do you

19 think that it's going to matter enough that you'll put

20 yourself in that chair and do the hard work that will flow

21 from that decision?

22 　　　　　THE DEFENDANT:  Yes, ma'am.

23 　　　　　THE COURT:  Does it matter enough to you to do that?

24 　　　　　THE DEFENDANT:  Most definitely, Your Honor.

25 　　　　　THE COURT:  Did you read your sister's letter?  I

read both of them, of course; they were wonderful letters, but
your sister's letter, did you read that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  She's your younger sister.  You've
given her quite a lot of work to do.

MR. SCHRAGER:  She's in the courtroom, too, Your
Honor.

THE COURT:  Well, I'm glad, then she knows that her
letter mattered to me, and she took a lot of time to lay it
out there.  And I thought her expression about you that you
"weren't or you are not an offender on purpose," she's sort of
right and she's sort of wrong, isn't she?  What you did was on
purpose, but it was probably out of this set of mental health
issues that basically were part and parcel of your behavior.

I was really interested in a fact that both your
sister and your mother referenced, and that was that when you
were just an infant practically, you had some physical needs,
some cause for surgery that was substantial surgery, but it's
still being cited 35 years later as a reason for your current
problems.  I doubt if that's true.

What do you think?

THE DEFENDANT:  I would have to say no.

THE COURT:  I think it is obviously part of your
history, but after a while, for one thing the surgery
appears to have been successful.  There was one other time

1  when you needed some additional medical help, but otherwise

2  you're basically on your feet and functioning, aren't you?

3  You have a job and you were able to complete quite a lot of

4  education, right?

5         THE DEFENDANT:  Yes, Your Honor.

6         THE COURT:  So those things, they form a part of

7  your past, but you can't drag them into the future all the

8  time.  They can't become an excuse for not doing what you

9  ought to do now.  There's a point at which -- do you know what

10  a statute of limitations is?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Well, we sort of have a statute of

13  limitations on that, don't we?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Just one that would be reasonably

16  imposed, that you can't go back and regard it as a cause of

17  anything except that it is just who you are.

18         So whatever else is shaping your behavior and your

19  reactions and so forth, those are the things you need to work

20  on now.  The things that you can actually control.

21         Wouldn't you agree?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  I saw you were discharged under

24  honorable conditions from the Army.  Can you give me any

25  insight into that?  Were you in good standing when you left

1   the Army?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Was that a good experience all things

4   considered?

5           THE DEFENDANT:  Yes, ma'am.  I wish I would have

6   stayed in it.

7           THE COURT:  Well, actually, when you first started

8   speaking to me at this hearing, I thought I could see the

9   evidence of that military training.  You're standing right up

10  there.

11          It might have been a good thing for you to have

12  stayed there, a little bit more structure and a lot of the

13  day-to-day needs provided in terms of uniforms and barracks

14  and food and so forth.

15          Mr. Schrager, what would you say on Mr. Endre's

16  behalf?

17          MR. SCHRAGER:  Your Honor, it seems that every time

18  we have a case like this, it's very thought-provoking for me.

19  Personally, I try to figure out why people do the things that

20  they do.  And as I listened to Your Honor, and I listened to

21  Mr. Endre's response, I think the Court's word was "amiss."

22  And I think much of what Mr. Endre said, using more words, was

23  really saying the same thing.

24          That's kind of the common theme that I see in this

25  case and other cases where I've been in this courtroom

discussing it.  I believe that Mr. Endre just experiences

things and looks at the world differently than the rest of us.

And there's something amiss with his judgment, with his

perception or whatever it is.  It's not an excuse, it's not a

legal defense.  I think it's an explanation.

I agree with the Court.  I think that if he goes to

a place where he has mental health counseling, that's

wonderful, but he's the one that has to open up the door and

embrace it.  And he's the one that really has to seize that

opportunity.  Just giving him that opportunity's not going to

cure anything.

So many of these cases, and I think this case, too,

the criminal history is not good.  There's no way to say it

any differently than that.  But once again, the past

dispositions have been relatively light, and they come to

federal court charged with this and it is really significant,

and rightfully so.  I understand why it is.  Congress has

decided that these are very serious offenses, and they have

legislated accordingly.

I just cannot believe that anybody sets out to want

to have this life, Your Honor.  I think with other crimes that

come before the Court, I think people do set out for that

life.  I don't think anybody that comes through on these kinds

of charges sets out on this kind of life, and says "You know

what?  This is what I really want to do."

1      And I don't think Mr. Endre is any exception.  I

2 don't think that really changes anything, but I think it gives

3 a little bit of -- hopefully some insight into why people do

4 the kinds of things to which he has just entered a plea, and

5 which seems all too pervasive throughout our society.

6      Your Honor, it's the judgment of the defense that

7 the period of 212 months is a significant period of time, and

8 that this period of time more than adequately addresses the

9 factors in 3553(a).  I think it's an appropriate sentence.  I

10 think it would -- if accepted by the Court and we're certainly

11 urging the Court to accept it, it sends the right message to

12 Mr. Endre and to society.  More importantly perhaps, it

13 relieves Girl No. 1 the opportunity to sit over there in that

14 chair.  And I think that's worthwhile as well.

15      I would not say that if the disposition proposed was

16 significantly lower, but I think 212 months sends a pretty

17 strong message to this individual particularly, and to society

18 in general.  Whether it's going to have any impact on the next

19 person down the road, I have my doubts, but my opinion really

20 doesn't count.  I wish it would.

21      I wish that people out there could hear what Your

22 Honor says to these folks before they go out there.  I wish

23 people out there that were thinking about this and doing this

24 would have the benefit of knowing these sentences, because

25 almost without exception, every single person that I represent

1  anyway, that's in Mr. Endre's position, are just staggered by

2  the penalties.

3      Now, whether that would have an impact on them, if

4  they could turn the clock back three years, five years, eight

5  years, whatever it is, I don't know.  But without exception,

6  they're always stunned by how strong the sentences are.

7      So in summary, we are respectfully requesting that

8  the Court approve of the plea agreement.  And we're also

9  requesting that the Court recommend to the Bureau of Prisons

10 that Mr. Endre be afforded an opportunity to have some mental

11 health counseling.  He's going to be there a long time, and

12 he's going to have a long time to think about it.  And maybe

13 it's going to take him a year or so to keep thinking about it

14 before it's really going to set in.  I don't know, but it

15 would be unfortunate for him not to have that kind of an

16 opportunity if that opportunity presents itself within the

17 Bureau of Prisons.

18      THE COURT:  Did you go over the conditions of

19 supervised release with him?

20      MR. SCHRAGER:  I did.  Paragraph 81, I did go over

21 that with him.

22      THE COURT:  Are there no objections to those?

23      MR. SCHRAGER:  No, Your Honor.

24      THE COURT:  Mr. DeBrota, what's the Government's

25 view?

1       Give Mr. DeBrota a little desk space there.  just

2 move a little to your right.

3       MR. DeBROTA:  May it please the Court.  Let me first

4 address the conditions of supervised release issue.

5       Consistent with the position I took in this court in

6 U.S. versus Bricker, there is one of the recommended

7 conditions that I think might be more narrowly drafted, and

8 it's the way I've drafted it in paragraph 8A of the plea

9 agreement, Your Honor.  This is the no pornography, no

10 obscenity provision.

11       The one in the PSR is, in the abstract, appropriate,

12 but I think the one that is more narrowly addressed in

13 paragraph 8A of the plea agreement is better worded and would

14 stand constitutional scrutiny.

15       THE COURT:  Let me just look at that.

16       Yes, I have that, and I'm familiar with that

17 position that you're advocating.

18       MR. DeBROTA:  Okay.  So my recommendation would be

19 to do the one the parties' jointly recommended in the plea

20 agreement rather than the broader one that's in the probation

21 office report.  In either event, the defendant's had notice

22 well before now of both formulations, but I like the more

23 narrowly-drafted one.

24       THE COURT:  All right.

25       MR. DeBROTA:  The recommended sentence, Your Honor,

of 212 months is in the middle of the range of 188 to 235,
which is the applicable guideline range.  We think that the
specific offense characteristics talking about undue
influence, talking about use of a computer cell phone, that
kind of thing, these are appropriate considerations in a case
like this where this defendant on three occasions seduced this
teenage girl.  It was a process.  He used a facility of
interstate commerce, his phone, to do that as part of that
process.

         She was 13.  Today he's 35.  So it was a huge
difference in age which speaks to that.  So we think that the
guideline here, as an appropriate starting point, asks good
questions.  So it's an appropriate starting point for the 3553
analysis.

         The reason the Government is asking for you to
accept this agreement at 212 has to do with a balancing
principle of the 3553 factors.  I agree with the Court that
society and the law puts the burden on the adult to maintain
control of themselves, not the burden on 13-year-old girls to
make good decisions or be free from the influence of adults.
The burden goes a different place.

         The sentences here are strong because there's a
strong societal need to protect minors from this kind of
thing.  So it's quite a serious crime, and the nature and
circumstances of the offense are not good.  This was a pattern

1  of behavior.  He had time to think this through and went

2  ahead.

3        Getting to his history character, this isn't his

4  first time he's had a sexual issue with a minor.  He does have

5  an Ohio case that has a minor in it.  He has a long history of

6  fraud and bad checks, and he made it to criminal history

7  category six by age 35.

8        So that doesn't speak well of his ability up to now

9  to sort of maintain control of himself.  I appreciate he has

10  mental health challenges, which are in the PSR.  I won't

11  repeat those.  And I appreciate today, and before today, he

12  said he wants to get help with this and wants to try to find a

13  way to get back on the straight and narrow.

14        So put all that together, we think a sentence

15  recommended at the middle of the range, which is what we came

16  up with, is appropriate.  But for some aspects of how he's

17  responding to this -- he waived indictment after he got his

18  questions answered more recently in the plea agreement, he

19  signed the plea agreement, he hasn't put the victim through

20  this -- we would have been recommending the high end of the

21  range because of his history, but I think on balance, he did

22  early on admit his guilt in this defense and reached an

23  agreement.

24        It's probably the case this would have been resolved

25  earlier, but having nothing to do with him, the same lawyer

1  previously representing him, Miss Beitz, had a conflict issue

2  show up with a different defendant.  None of that was his

3  fault, but that gets us to where we are at the present.

4          So we would ask you to accept the plea agreement.

5  It is a number which we were told by the Marion County

6  Prosecutor's Office would be satisfactory to them, and then

7  they would not proceed forward with their contact sex charges

8  which sort of represents a package here.  And that's an

9  important consideration.  That number was reached as part of

10 that negotiation to this.

11         And I do think that the conditions relating to

12 mental health treatment and access to materials, pornography

13 and so forth, as applied to this defendant, we think

14 pornographic materials would be a trigger for him,

15 particularly on the facts of this case which included his

16 taking of some pictures of his victims that's associated with

17 his trade craft, coupled with prior history and the mental

18 health history, all of that would support a ban on him having

19 access to those kind of materials applied in this case.

20         For that reason, I don't think the condition should

21 tie it to a mental health counselor's view on that point.  I

22 think the Court has enough information on that.  As to the

23 length of supervised release, I think if we're going to have a

24 problem in the future, it's going to manifest itself well

25 under ten years.  So ten years is an appropriate starting

point.  After thinking about it, I agreed to agree to the ten

years as opposed to some longer number because I think it's

either going to work or it's not in his case.  And if it does

work, that's great, but I'd love to have this guy not be here

again in some future time.  That's our position, Your Honor.

THE COURT:  Thank you, Mr. DeBrota.

Come back there, sir.  This is a tough call I have

to say.  It's not that I don't appreciate the significance of

the criminal conduct.  I really do appreciate that.

I'm concerned that you had the prior instance in

Ohio back when you were 29, not all that many years ago, where

you basically took a 15-year-old girl out of state and had

sexual intercourse with her.  You were apprehended for that,

but that particular charge was dismissed because you pled

guilty to another offense and got a much-reduced penalty of

six months in jail.

But that's the same sort of conduct, the same sort

of intrusive behavior that takes advantage of a younger person

in order to satisfy your own urges, your own needs.  So that's

a concern as well.

That said, the statute itself imposes really a

significant period of incarceration, ten years to life.  When

I think about other kinds of cases that have damaging conduct

as part of the horrific facts and so forth, it's still an

unusual case that gets into the range of ten years to life, a

mandatory minimum ten years and, of course, you qualified for that. There's no safety valve. There's no way you can get out from under that according to any of the legally acceptable devices for doing that with a criminal history category 6.

So in a way, things have sort of accumulated on you here to make the penalties that are already harsh even harsher.

One of the problems with an 11(c)(1)(c), from my point of view as a judge, is that it leaves my input greatly limited. I think I could have done a better job on this sentence frankly. The question is whether I should reject it for some reason that I think is -- would be -- my sentence would be a better sentence, more nuanced, more reflective of what I think the terms and conditions are, but under this rule, when it gets presented to me, my views, other than yes or no, are not relevant.

So I have to decide whether under the circumstances this sentence is acceptable, is it reasonable, is it fair, even though I would have done it differently. So that's the thing that makes it tough. That's the balancing act.

I think even the ten year supervised release term could have been reshaped so that there was more on the supervised release end of it than there was on the incarceration end, that we could have done with less incarceration and longer supervised release, and put some real

1   restrictions on you that didn't require incarceration.  And it

2   would have been a sentence that had the greater potential for

3   dealing with the problems of your behavior.

4        I'm not any more prepared to put a predator out on

5   the streets than any other judge I've ever known.  I have

6   never known a judge who wanted to do that.  But I think that

7   there are some opportunities within the boundaries of this

8   case to do some things that would have made incarceration in

9   the substantial range of 212 months not necessary if joined

10  with a longer period of supervised release and some meaningful

11  conditions.

12       So I'm struggling to figure out whether I feel

13  strongly enough about that that I should reject the sentence,

14  or if I should accept the parties' balance.  And it does use

15  the same components that I would to basically try to move you,

16  Mr. Endre, into a more solid citizenship, into a more

17  responsible person going forward than you have been in the

18  past.

19       So that's my struggle here.  I can't say that the

20  sentence you've constructed is unreasonable.  I just would

21  have done it a little differently.  And maybe since you all

22  agreed to it and think that it's the best way to approach it,

23  I should yield to that since I can't really say it's

24  unreasonable, and that's my responsibility is to decide on a

25  reasonable sentence.

1    So I speak candidly here partly to process it for
2  myself, but also to explain to all of you how I'm coming to my
3  decision.  So those things said, taking into account the fact
4  that this was a patterned offense, this particular one, where
5  it played out over a period of time and involved various
6  aspects of overbearing behavior, illegal overbearing behavior,
7  that it comes close on the heels of a prior similar offense,
8  which means that this is conduct that's deeply engrained,
9  perhaps more than my optimism wants to indulge in terms of
10 your ability to change it.
11    So I'll go with the recommended sentence of 212
12 months followed by ten years of supervised release, partly out
13 of deference to the highly experienced and able lawyers who
14 are both before me, whose judgments I deeply respect, and
15 without signaling that I've capitulated on my responsibility,
16 which is separate, but because this is also a reasonable
17 sentence.  It's just not exactly the one I would have
18 constructed.
19    So it is defensible.  It is reasonable.  It's a
20 sentence that the Court, in good conscience, in good judgment,
21 can accept, and I do.  So I impose the conditions of
22 supervised release that were laid out in the presentence
23 report, for which there was no objection, with the revision
24 that was proposed by Government counsel in paragraph 8A of the
25 plea agreement with respect to the possession of obscenity,

1  child pornography, child erotica, or nude images of minors.

2  And I will also recognize the importance of the limitation

3  that Mr. DeBrota addressed with respect to the restriction not

4  being tied to mental health counselors and treatment with

5  respect to these particular materials.

6  The restitution figure was also agreed to, $2,500,

7  so I'll impose that as a payment to the victim of this

8  offense.  And the special assessment of $100, as I said, is a

9  mandatory fee.  So that's the sentence that I intend to

10  impose.  Do you have any legal objection to it or do you

11  request any further elaboration of my reasons, Mr. Schrager?

12  MR. SCHRAGER:  No objection.  I do not believe

13  there's any need for further elaboration.

14  THE COURT:  Mr. DeBrota?

15  MR. DeBROTA:  No, Your Honor.  I understand the

16  Court's ruling and the Court's analysis, which I think comes

17  out at the right place as to the narrow legal question on

18  accepting or rejecting a rule 11(c)(1)(c) agreement.

19  If the Court would find it helpful, I could

20  elaborate further.  I don't think it would affect your ruling,

21  but as to why this guideline range is a little artificially

22  low, which may have borne onto the analysis in terms of what

23  could have happened in sentencing without a plea agreement, if

24  that's useful.

25  THE COURT:  I don't think I need that, but I thank

1  you for your offer.

2          MR. DeBROTA:  Okay.  Other than that though, Your

3  Honor, I have no other issue to bring to the Court's attention

4  at this time.

5          THE COURT:  Very good.

6          MR. DeBROTA:  Thank you.

7          THE COURT:  The sentence then, Mr. Endre, that I

8  have outlined as my intended sentence is now the judgment of

9  the court, and a Judgment and Commitment Order will be drawn

10  up to reflect these elements and they'll bind you in these

11  ways until the judgment's fully satisfied.

12          I believe under your plea agreement, since I have

13  accepted your plea agreement, that you've waived your right to

14  appeal this sentencing decision, but that's not my call.  You

15  need to talk to Mr. Schrager about that.

16          If you think you've retained a right to appeal this

17  decision, this sentencing decision, you need to file that

18  within two weeks of the entry of judgment on the Court's

19  docket.  It will get docketed sometime this week.  I don't

20  know exactly which day, but by the time it gets through the

21  clerk's office process, it will be this week.  So you'll be

22  able to figure out the two weeks that you have in order to

23  file a notice of appeal.

24          Yes, Ms. Fitzgerald?

25          PROBATION OFFICER:  Is forfeiture an issue in this

1  case?

2         THE COURT:  Is it, Mr. DeBrota?  It was part of the

3  plea agreement.

4         MR. DeBROTA:  It is in the plea agreement, yes, we

5  want him to forfeit the stuff we took from him.  Then there's

6  the restitution figure as well.

7         THE COURT:  So, yes, thank you for that prompt.

8  Forfeiture is also awarded in favor of the United States on

9  the properties that were referenced.

10        I'm going to recommend that the Bureau of Prisons

11  find a place of incarceration where you, Mr. Endre, can be

12  designated where there is good mental health treatment and

13  counseling so that you can begin to acquire an understanding

14  of what it is that makes you go off the rails in these

15  regards.  And hopefully you can self correct on future

16  conduct, and you don't have to keep returning to behavior

17  that's going to undoubtedly result in future prosecutions.

18        You're at an age of 35 where you need to make some

19  fundamental decisions about where you want to live the rest of

20  your life.  If you want to live it as a free man or do you

21  want to live it always in some sort of custodial setting where

22  you have no freedom to pursue whatever your interests are.

23        So I hope you'll take to heart this mental health

24  counseling and treatment opportunity that you have.  Knowing

25  that you're close to your family, I'll add to the

1  recommendation to the Bureau of Prisons that you be placed in
2  a place for this period of time that's as close to your family
3  as possible.  But the priority is going to be on getting the
4  proper mental healthcare, but they have various choices, and
5  I'll try to get one as close to your family, so they can visit
6  you, as possible.

7            Anything else today, Mr. Schrager?

8            MR. SCHRAGER:  No, Your Honor.

9            THE COURT:  Anything from you, Mr. DeBrota?

10            MR. DeBROTA:  Just to be certain, I was focusing on
11  some of the things you were saying possibly at the expense of
12  this.  Did you order the restitution as well, Your Honor?

13            THE COURT:  Yes, I did, 2,500.

14            MR. DeBROTA:  Thank you, Your Honor.

15            THE COURT:  That completes the matter.  Good luck to
16  you, sir.

17            THE DEFENDANT:  Thank you, ma'am.

18                 (Court adjourned at 4:45 p.m.)

19

20

21

22

23

24

25

CERTIFICATE OF COURT REPORTER


       I, Laura Howie-Walters, hereby certify that the foregoing is a true and correct transcript from reported proceedings in the above-entitled matter.



<u>/S/LAURA HOWIE-WALTERS</u>   July 16th, 2016

LAURA HOWIE-WALTERS, FCRR, RPR, CSR
Official Court Reporter
Southern District of Indiana
Indianapolis Division